IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MR. JAYRAJSINH PANKAJSINH BARAD, (A 245 134 845); and MRS. PANKTI MUKESHKUMAR CHAUHAN, (A 249 394 948); | | **8:25CV162** |
| Plaintiffs, | | **MEMORANDUM AND ORDER** |
| vs. | | |
| KRISTI NOEM, Secretary of the Department of Homeland Security; PAMELA BONDI, United States Attorney General; KIKA SCOTT, Acting Director of the U.S. Citizenship and Immigration; LAURA ZUCHOWSKI, Director, USCIS Vermont Service Center; and THOMAS SCHUURMANS, Acting Director of the USCIS Nebraska Service Center; | | |
| Defendants. | | |

In this case, plaintiff, a national of India who is represented by counsel, seeks to compel defendants to provide bona fide determinations and decisions on the pending work authorization applications. Plaintiff filed an I-918, Petition for U Nonimmigrant Status, on or about July 24, 2024. Filing No. 1 at 9, ¶ 42. Around this same time, Plaintiff also filed a Form I-765 Application for Employment Authorization. *Id.* Plaintiff brings a count against Defendant under the pursuant 5 U.S.C. § 555(b) and claims USCIS has unreasonably delayed rendering decisions concerning bona fide determination ("BFDs") and Employment Authorization documents ("EADs"). Filing No. 1 at 10. This is an action for declaratory, mandamus and injunctive relief. This case is now before the Court on Defendant's Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and in the alternative motion to dismiss for failure to state a claim. Filing No. 4. Plaintiff filed a

1

response to the motion to dismiss.  Filing No. 9.  For the reasons set forth below, Defendant's

motion to dismiss is granted.  Defendants also filed a motion to strike Plaintiff's response.

Filing No. 10.  Because of the determination regarding the motion to dismiss for subject

matter jurisdiction, the Court need not address the motion to strike and will deny the same.

## FACTS

The plaintiffs are a husband and wife residing in Omaha, Nebraska, who were victims

of a serious crime.  They cooperated with Hapeville Police Department Police in the

investigation of the crime.  They applied for a special nonimmigrant status commonly called

the "U Visa."  They have complied with all statutory and regulatory requirements for this

special nonimmigrant status.  The plaintiffs bring this action to obtain an order compelling

the immigration agency, USCIS, to make a bonafide determination on their U-Visa

applications and to issue work authorization pursuant to statute and former President

Biden's directives to make bona-fide determination on pending cases and issue work

authorizations.  Filing No. 1 at 2.

Plaintiffs allege:

39. Mr. Barad sought U nonimmigrant status to avail the immigration benefits
and the protections offered by the statute. Having deferred action or U
nonimmigrant status will also create a more secure and certain future for Mr.
And Mrs. Barad because they will not have to be concerned about possible
removal from the U.S. putting at stake their future.

40. The Hapeville Police Department Chief of Police certified that Mr. Barad
was helpful in the investigation.  *See* Form I-918A U Nonimmigrant Status
Certification.

41. On 07/24/2024, Mr. Barad submitted a complete and substantively
approvable application for U nonimmigrant status to the USCIS Vermont
Service Center.  8 C.F.R. § 214.14(c)(1), which was received by them on
08/12/2024.  On 08/13/2024, USCIS issued Receipt Notices for this I-918
petition along with I-765 work authorization request.

42. On 12/26/2024, Mrs. Pankti Mukeshkumar Chauhan submitted a complete
and substantively approvable application for U-2 nonimmigrant status to the

USCIS Nebraska Service Center. 8 C.F.R. § 214.14(c)(1), which was received by them on 12/30/2024.  On 01/14/2025, USCIS issued Receipt Notices for this I-918 petition along with I-765 work authorization request.

43. There is no evidence of fraud in the applications and Mrs. Barad attached compelling evidence showing eligibility for U nonimmigrant status.

44. On 01/25/2025, USCIS issued Notice for Biometrics, which were completed on 02/12/2025 for Mrs. Pankti Mukeshkumar Chauhan.

45. USCIS issues such Notices for those petitions only that are complete.

Filing No. 1 at 9–11.

# DISCUSSION

## USE OF ACTION
## Unreasonable Delay
## Causes of Action I, II and III

Plaintiffs further allege:

50. The Defendants have a statutory obligation to process the petitions for Mr. Barad and his wife for U nonimmigrant status and waitlist placement within a reasonable time.  5 U.S.C. § 555(b).

51. The Defendants delay in excess of 15 months is unreasonable and therefore violates 5 U.S.C. § 555(b).

53. The Mandamus Act, 28 U.S.C. § 1361, grants authority to courts to compel defendants to perform a duty owed to plaintiff.

54. The Defendants have a regulatory, ministerial obligation to place all eligible petitioners for U nonimmigrant status on the waiting list.  8 C.F.R. § 214.14(d).

55. The Defendants have a duty to make a bonafide determination on Mr. Barad and his wife's U-Visa petition.

56. The Defendants failure to perform this duty for more than 15 months violates the regulation and President's directives.

58. Under INA § 214(p)(6), the Defendants have an obligation to issue, within a reasonable time, work authorization for individuals who have presented bona fide petitions for U nonimmigrant status.

59. The Defendants have failed to issue work authorization to Mr. Barad and his wife for more

than 15 months.

3

60. The Defendants failure to issue work authorization to Mr. Barad and his wife violates INA § 214(p)(6) and 5 U.S.C. § 555(b).

Filing No. 1 at 10–12.

Plaintiffs seek an order to compel Defendant USCIS to make a bona fide determination on their pending U visa application.  USCIS, however, moves to dismiss this case for lack of jurisdiction to hear any claims seeking to compel a decision for work authorization based on a BFD/EAD.

**A. Standard of Review**

Plaintiffs move to dismiss portions of his complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  For the court to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction are presumed true and the motion can succeed only if the plaintiff has failed to allege an element necessary for subject matter jurisdiction. *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 829 (8th Cir. 2003); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 (8th Cir. 2003) (noting that facial attack on the pleading under Rule 12(b)(1) is subject to the same standard as a motion brought under Rule 12(b)(6)).

In contrast, in a factual attack on subject-matter jurisdiction, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and no presumptive truthfulness attaches to the plaintiff's allegations. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).  The plaintiff has the burden of proving that jurisdiction exists by a preponderance of evidence. *See Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

**B. Discussion**

Plaintiffs bring a count against Defendant under the APA, 5 U.S.C. § 555(b), and claims USCIS has unreasonably delayed rendering decisions concerning BFDs and EADs. Filing No. 1 at 10 and 12, Prayer for Relief. But because those decisions are discretionary, Plaintiffs' claims are not within the jurisdiction of this Court and therefore must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *See Joshi v. Garland*, 728 F. Supp. 3d 1028 (D. Neb. 2024) (Gerrard, J.) (determining claims concerning pace of adjudicating BFD EADs were precluded from review) (citing *Thigulla v. Jaddou*, 94 F.4th 770, 774 (8th Cir. 2024)).[1]

The law was recently summarized by Judge Buescher in his recent *Monroy* case:

> The factual allegations in this case will make more sense with a brief statement of the legal background. At issue in this group of pro se cases is the U visa program, which was created as part of the Victims of Trafficking and Violence Protection Act of 2000 and is codified at 8 U.S.C. § 1101(a)(15)(U). The U visa program grants temporary lawful nonimmigrant status and work authorization to aliens if USCIS determines "the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" that has occurred in the United States; "the alien . . . possesses information concerning [that] criminal activity"; and "the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting [that] criminal activity." 8 U.S.C. § 1101(a)(15)(U)(i). An immigrant seeks a U visa by filing an I-918 petition. Petition for U Nonimmigrant Status, USCIS, (citation omitted); 8 C.F.R. § 214.14(c)(1). Certain family members of the I-918 principal petitioner may be eligible for derivative U nonimmigrant status by submitting a Form I-918A. 8 C.F.R. § 214.14(f)(1)–(2). If the U visa petition is approved, and the petitioner is present in the United States, the petitioner will receive lawful nonimmigrant status and employment authorization for up to four years, which can be renewed. 8 U.S.C. §§ 1184(p)(6), 1184(p)(3)(B); 8 C.F.R. § 274a.12(a)(19). Petitioners must specifically seek employment authorization, and they generally do so by filing a separate Form I-765 Application for Employment Authorization simultaneously with their I-918 petitions. *See* I-765, Application for Employment Authorization, USCIS, available at https://www.uscis.gov/i-765.

---

[1] Judge Brian Buescher recently addressed a number of these cases and determined they were a product of significant ghost-writing. *Monroy v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25CV74, 2025 WL 1267767, at *1 (D. Neb. May 1, 2025).

However, Congress capped the number of principal U visas available each year at 10,000. 8 U.S.C. § 1184(p)(2)(A). The number of petitions far exceeds the number of U visas available. New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53033 ("USCIS estimates that it will receive 12,000 Forms I-918 and 24,000 Forms I-918, Supplement A each fiscal year."). If USCIS determines a petitioner is eligible in all respects but the annual cap means no U visas are available, the petitioner is placed on a waiting list. 8 C.F.R. § 214.14(d)(2). According to the regulation, a petitioner on the waiting list may receive employment authorization in USCIS's discretion. *Id.* Petitioners residing in the United States will receive deferred action and await the availability of a U visa. *Id.*[2]

As to the statutory provision directly at issue here, the Immigration and Nationality Act (INA) provides in part, "The Secretary [USCIS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6). Based on this authority, USCIS implemented the bona fide determination (BFD) process to streamline review for potentially granting employment authorization documents (EADs) to bona fide petitioners. *See* Policy Alert, USCIS (June 14, 2021) (citation omitted). Pursuant to the BFD process, USCIS makes a case-by-case determination of whether to issue an EAD. Chapter 5 - Bona Fide Determination Process, USCIS (citation omitted).

Although the term "bona fide application" appears in § 1184(p)(6), the statute does not define "bona fide," "bona fide application," or otherwise dictate the process that the Secretary uses to determine whether to grant work authorization. *See* 8 U.S.C. § 1184(p)(6). Consequently, USCIS explains,

"As a matter of policy, USCIS interprets 'bona fide' as part of its administrative authority to implement the statute as outlined below. Bona fide generally means "made in good faith; without fraud or deceit." Accordingly, when interpreting the statutory term within the context of U nonimmigrant status, USCIS determines whether a petition is bona fide based on the petitioner's compliance with initial evidence requirements and successful completion of background checks. If USCIS determines a petition is bona fide, USCIS then considers any national security and public safety risks, as well as any other relevant considerations, as part of the discretionary adjudication."

---

[2] According to the government, "[a]lthough USCIS originally estimated that it would receive approximately 12,000 principal U visa petitions per year, the number of U visa petitions has far exceeded that estimate. *See* New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53033; *see* I-918 Chart, supra. For example, the agency has received more than 20,000 principal petitions every year since 2012, including more than 30,000 per year from 2015 through 2018, and again from 2022 through 2024. *See* I-918 Chart. In 2024, USCIS saw the highest volume of new principal petitions filed in the history of the U nonimmigrant classification. *Id.* Consequently, through quarter four of fiscal year 2024, there were 396,963 principal and derivative U petitions pending with USCIS. *Id.* With so many petitioners and so (relatively) few U visas, USCIS implemented the waiting list. *See* 8 C.F.R. § 214.14(d)(2)." Government's Brief, Filing No. 6 at 5.

Chapter 5 - Bona Fide Determination Process, USCIS (citation omitted). *Monroy v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25CV74, 2025 WL 1267767 (D. Neb. May 1, 2025) (Judge Brian C. Buescher).

The Court finds the analysis offered by Plaintiffs is not persuasive. The BFD is part of the discretionary process under statute and, as such, is also jurisdictionally barred from this Court's review. *Barot v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25-CV-101, 2025 WL 1208968, at *2 (D. Neb. Apr. 25, 2025) (Gerrard, J.) ("The decision the plaintiff seeks to compel and, more importantly, the process by which that determination is made, are squarely discretionary as explained by [*Thigulla*, 94 F.4th 770]."). USCIS has consistently interpreted 8 U.S.C. § 1184(p)(6) as authorizing discretion to implement a BFD and BFD EAD adjudication process at all, as well as whether to grant or deny employment authorization under that provision.[3] *See* 8 U.S.C. § 1184(p)(6) ("The Secretary [USCIS] may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 8 U.S.C. § 1101(a)(15)(U) of this title."). Under this discretionary process, the agency determines whether a U visa petition is "bona fide" (rendering a Bona Fide Determination, or "BFD") and if USCIS determines it is, then it determines whether to issue EAD.

Contrary to Plaintiffs' claim, no portion of USCIS policy requires the agency to grant employment authorization simply because someone has received a favorable BFD. To the contrary, the policy is clear that the decision of whether to grant employment authorization is discretionary. Chapter 5 - Bona Fide Determination Process, USCIS POLICY MANUAL, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited May 5, 2025).

---

[3] 8 U.S.C. § 1184(p)(6) provides in relevant part: "The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title."

These discretionary EADs necessarily fall within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)(ii) (stating "no court shall have jurisdiction to review . . . any other decision or action" relating to a decision made discretionary by statute).[4]    Quite the contrary, the Court finds that the language of 8 U.S.C. § 1252(a)(2)(B)(ii), when read in conjunction with the plain language of 8 U.S.C. § 1184(p)(6), is discretionary in nature and does not permit subject matter jurisdiction in these cases.

Plaintiffs' claim is pursuant to the APA, but "[t]he APA's right to judicial review does not apply when 'statutes preclude judicial review.'"  *Thigulla*, 94 F.4th at 774 (quoting 5 U.S.C. § 701(a)(1)).    Here, 8 U.S.C. § 1252 provides in part that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii).

With this statute, "Congress stripped federal courts of jurisdiction to review" the discretionary decisions specified.  *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024).    In other words, this provision—like its companion § 1252(a)(2)(B)(i)—"contains language indicating that the

---

[4] Interpreting similar language in *Beltran*, Judge Rossiter held that claims concerning the pace of adjudicating I-601A Applications for Provisional Unlawful Presence Waivers (I-601As) were precluded from review because Congress rendered "actions" relating to I-601As discretionary.  *Beltran v. Miller*, 699 F. Supp. 3d 785 (D. Neb. 2023); *see also* Judge Rossiter's similar holdings in *Grajales Cortes v. Miller*, No. 4:23CV3073, 2023 WL 9500788 (D. Neb. Oct. 20, 2023); *Macias v. Miller*, No. 4:23CV3078, 2023 WL 8253203, at *1 (D. Neb. Nov. 13, 2023); *Cisneros v. Miller*, No. 4:23CV3074, 2023 WL 9500782, at *1 (D. Neb. Nov. 14, 2023); *Hernandez v. Miller*, No. 4:23CV3084, 2023 WL 9501175, at *1 (D. Neb. Nov. 15, 2023). Judge Buescher rendered/issued similar holdings.  *See Solorio v. Miller*, 700 F. Supp. 3d 735 (D. Neb. 2023); *Ybarra v. Miller*, No. 4:23CV3082, 2023 WL 7323365, at *1 (D. Neb. Nov. 7, 2023); *Reyes Silva v. Miller*, No. 4:23CV3038, 2023 WL 7042347 (D. Neb. Oct. 26, 2023).

Judge Rossiter held that claims concerning the pace of adjudicating I-601 Applications for Waiver of Grounds of Inadmissibility (I-601s) were precluded from review because Congress again rendered "action[s]" regarding I-601s discretionary in 8 U.S.C. § 1252(a)(2)(B)(ii).  *Boulay v. Jaddou*, 700 F. Supp. 3d 753 (D. Neb. 2023) (on appeal) (Congress's jurisdictional bar concerning actions of discretionary decisions in 8 U.S.C. § 1252(a)(2)(B)(ii) necessarily included the precise pace at which USCIS made said discretionary decisions.).

decision is entrusted to the Attorney General's discretion." *Id.* at 14 (quoting *Kucana v. Holder*, 558 U.S. 233 (2010)).  But Congress did not make the availability of judicial review dependent on agency practice.  Rather, § 1252(a)(2)(B)(ii) bars judicial review of decisions "made discretionary by legislation." *Kucana*, 558 U.S. at 246–247 (emphasis added).

As recently stated by the Eighth Circuit:  Section 1255(a)'s text establishes the Attorney General's "discretion" both to adjust applicants' statuses, even after the applicants meet the statutory requirements, and to enact "such regulations as he may prescribe" to administer this process. *Thigulla*, 94 F.4th at 775. ***See also***, *id.* at 774, where the Eighth Circuit stated that 8 U.S.C. § 1252(a)(2)(B)(ii) is "Congress's broad prohibition of judicial review," which includes the "process" of making a discretionary decision, thereby barring plaintiffs' claims for unreasonable delay of their I-485 applications because adjustments of status were made discretionary pursuant to 8 U.S.C. § 1255(a).  That distinction "reflects Congress' choice to provide reduced procedural protection for discretionary relief." *Patel v. Garland*, 596 U.S. 328, 345 (2022).  In the interest of finality, Congress vested the Secretary with the discretion to allow the agency's mistakes to inure to the benefit of the noncitizen.  At the same time, Congress did not want this discretion to open up a new source of litigation. *Id.*  As stated by Judge Gerrard:

> The plaintiff's complaint suggests that the Court can provide the relief requested in this case because it will only be ordering USCIS to make a decision, not directing USCIS in how to exercise its discretion.  Filing 1 at 6.  But that argument is precluded by the Eighth Circuit's decision in Thigulla, which applied § 1252(a)(2)(B)(ii) to discretionary decisions about the decision making process, not just the result. 94 F.4th at 776; *see also Joshi v. Garland*, 728 F. Supp. 3d 1028, 1033 (D. Neb. 2024); *Chalamalesetty v. Jaddou*, No. 4:22-CV-3182, 2023 WL 6387976, at *3 (D. Neb. Sept. 29, 2023), aff'd, No. 23-3216, 2024 WL 1920254 (8th Cir. Apr. 30, 2024), cert. denied, 145 S. Ct. 546 (2024). The Court is required to defer to "Congress's broad prohibition of judicial review in § 1252(a)(2)(B)(ii)" and "the tradition of agency discretion over internal procedures." *Thigulla*, 94 F.4th at 777; *see also Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307 (11th Cir. 2025); *Geda v. Dir. United States Citizenship & Immigr. Servs.*, 126 F.4th 835, 847

(3d Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024), *cert. denied*, 220 L. Ed. 2d 422 (Jan. 21, 2025).

The decision the plaintiff seeks to compel and, more importantly, the process by which that determination is made, are squarely discretionary as explained by *Thigulla*.

*Rico v. Dir., U.S. Citizenship & Immigr. Servs.*, No. 8:25-CV-119, 2025 WL 1192465, at *2 (D. Neb. Apr. 23, 2025).

It is clear from the orders of the United States Supreme Court in *Bouarfa* and the Eighth Circuit in *Thigulla* that this Court has no jurisdiction over this matter.

THEREFORE, IT IS ORDERED THAT:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction, Filing No. 4, is granted as to subject matter jurisdiction.

2. Defendants' motion to strike, Filing No. 10, is denied.

Dated this 20th day of June, 2025.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge